OLCOTT v. THOMPSON.

The form of the cover of a reservoir used in the enjoyment of an aqueduct easement gained by prescription, is not fixed by the prescription, but may be reasonably changed by the land-owner in the improvement of his grounds, no injury being done to the aqueduct proprietors.

ASSUMPSIT, for the plaintiff's share of a circular brick building, erected and used for a cover of an aqueduct reservoir, which cover, it is alleged, was destroyed by the defendant, a cotenant with the plaintiff.   Verdict for the plaintiff.

*Parker* and *Waite*, for the defendant, cited *Aldrich* v. *Parsons*, . 6 N. H. 555.

*Colby* and *Cushing*, for the plaintiff, cited *Mills* v. *Peirce*, 2 N. H. 9 ; *Chesley* v. *Thompson*, 3 N. H. 9 ; *Odiorne* v. *Lyford*, 9 N. H. 502.

DOE, C. J.   One cotenant of real estate may recover, in an action of assumpsit against another, for his share of any trees, fixtures, or other part of the estate destroyed, severed, or carried away by such other.   Gen. St., c. 201, s. 3.   This statute amends the common law by allowing one cotenant of real estate to maintain assumpsit against another for certain common-law torts.   It gives, not a new right, but a new remedy.   In an action brought upon this statute, the plaintiff must allege and prove that he is a cotenant of real estate with the defendant.   The plaintiff complains that the defendant destroyed the cover of a reservoir.   The declaration describes the reservoir and its cover as situated on a certain tract of land, but does not allege that either the reservoir or its cover is real estate.   It says the reservoir is a water fountain, but does not say whether it is above or below the surface of the earth, how it is connected with the ground, of what material it is made, how it is filled, by what right it is on the land, or that the plaintiff is an owner of the land.   For aught that appears in the declaration, the reservoir and cover may be personal property ; and if the reservoir were real estate, the cover might be personal. *Dame* v. *Dame*, 38 N. H. 429 ; *Dame* v. *Dame*, 43 N. H. 37 ; 3 Kent Com. 401, note *e*.

The evidence tends to show that the plaintiff, the defendant, and seven others, are proprietors of an aqueduct; that the reservoir and its cover were their common property, and a part of their aqueduct on the defendant's land ; and that the right of all the aqueduct proprietors, except the defendant, to keep aqueduct materials, including the reservoir and its cover, on the defendant's land, is a part of their aqueduct easement in his land, where the cover had stood about forty years, and been under the control of the proprietors, one of them, Kimball, having the care of it and keeping the key.   The easement of the defendant's eight associates is a prescriptive right to draw water from his land, and to do no more there than is reasonably necessary for the maintenance and use of the aqueduct.   They have no title to the soil, but they have a right to maintain the aqueduct there.   Their prescriptive easement is by a presumed grant.   *Wallace* v. *Fletcher*,

30 N. H. 434. The presumed grant is of an aqueduct privilege, including authority to do what is reasonably necessary for its enjoyment. Their right to keep the reservoir covered is not independent, but a mere incident of the aqueduct, and part of the easement. If they abandoned the aqueduct, they would not retain a legal power of covering the reservoir.

The nature and extent of the prescriptive right are measured by the adverse and undisturbed use, which is conclusive evidence of the terms of the presumed grant. The presumption raised by the use is, that the owner of the servient tenement and the owner of the dominant tenement bound themselves by an agreement as to the essentials of an easement conveyed by the former to the latter, and that neither bound himself to abstain from changes in his own tenement not detrimental to the other. 3 Kent Com. 443. Such would have been their understanding and agreement, shown by the express terms or legal construction of the grant, if there had been a grant; and the use has no more effect than the grant which it proves. From the use, a grant is inferred, contrary to the fact, by a legal fiction, for the repose of the easement title so long asserted and enjoyed, and not for the repression of improvement and industrial enterprise which the law favors. *Kittredge* v. *Woods*, 3 N. H. 503, 505; *Conner* v. *Coffin*, 22 N. H. 538, 541; *Needham* v. *Allison*, 24 N. H. 355, 358; *Sawyer* v. *Twiss*, 26 N. H. 345; *Plumer* v. *Plumer*, 30 N. H. 558, 568; *Wadleigh* v. *Janvrin*, 41 N. H. 503, 514; *Brown* v. *Collins*, 53 N. H. 442, 448, 450.

There is no presumed grant of a right to exercise the easement in an unnecessary and unreasonable manner. Washburn Easements 82. The right of the easement owner and the right of the land-owner are not absolute, irrelative, and uncontrolled, but are so limited, each by the other, that there may be a due and reasonable enjoyment of both. The forms and materials of the reservoir cover and water pipes are restricted, not by those heretofore used, but by the reasonable necessity of the case. The substance of the easement is shown by the usage; but the form of the cover is a question of reasonable necessity. And in determining that question, the rights of the defendant, as the owner of the land, are to be considered, as well as the rights of the owners of the easement. He cannot compel them to adopt a form unreasonably inconvenient; and they cannot compel him to submit to the disfigurement of his grounds by a structure unreasonably unsightly and repulsive. The form may be a matter of great consequence to him, and of no interest to them.

The defendant's evidence tends to prove that some proposed changes in his buildings made the removal of the reservoir cover necessary, and that he removed it with the intention of replacing it with another of a different form, but equally useful. One of his defences is, that he intended, at his own expense, to put on a new cover as good as the old, without injury to the aqueduct proprie-

tors, of whom he was one, and that the only injury the other proprietors suffered they inflicted upon themselves, by obtaining an injunction against the execution of his design, and by unnecessarily rebuilding the cover, which, if they had not prevented, he would have rebuilt without cost to them.   No reason appears for not allowing him to improve his premises, in matters of convenience or ornament, by giving the reservoir a more shapely cover, without damage to the other aqueduct proprietors.   He acted unwisely in entering upon the work without consulting the other parties in interest; and the whole controversy may have grown out of a misunderstanding caused by his indiscretion.   They may have supposed he intended to leave the reservoir uncovered, or unsuitably covered.   They might have made no objection to his unobjectionable reconstruction, if they had understood it.   Although not bound, in a certain strict legal sense, to inform them, and ask their consent, he may have wilfully or negligently excited their fears, and provoked litigation, by withholding his satisfactory explanation : and this may be a subject of consideration, on the final equitable question of costs, even if he prevails on the legal issue.

We think there is error in the charge that he could not remove the cover without the consent of the other aqueduct proprietors, unless it was unfit for the aqueduct purpose.   In a different form, it might not be less fit for that purpose ; and although, if the land-owner's interest were disregarded, the old form might be fit for that purpose, his proposed alteration might be an exercise of his right of keeping the form within a use of his land reasonably necessary for the aqueduct privilege.   No lapse of time could bar an improvement of his servient estate that would work no harm to the dominant estates of his neighbors.

If this land-owner's defence is not successful at the next trial, the defendant may contend that as one of the aqueduct proprietors he could rightfully remove the cover, and build another equally convenient and valuable for the aqueduct purpose of his associates and himself.   *Cubitt* v. *Porter*, 8 B. & C. 257 ; 2 Saund. Pl. & Ev. 1133 ; 1 Chitty Pl. 79, 179 ; *Doe* v. *Morrell*, Smith (N. H.) 255, 259.   It does not appear that the right of the defendant, as one of those proprietors, to determine the form of the cover, is inferior to that of the plaintiff.

*Verdict set aside.*

ALLEN, J., did not sit: the others concurred.